A01A2368, A01A2369. BIXBY v. THE STATE (two cases).

(561 SE2d 870)

PHIPPS, Judge.

Angela and Howard Bixby were tried by a jury and convicted of conspiracy to defraud the State and theft by taking. They appeal separately. In Case No. A01A2368, Angela Bixby claims that the trial court erred by (1) ruling that testimony by the Bixbys' civil attorney on a limited matter would waive entirely the attorney-client privilege, (2) allowing two witnesses to offer opinions based on inadmissible hearsay and (3) allowing the State's expert to express his opinion on the ultimate issue in the case. She also claims that her trial counsel was ineffective for failing to object to the admission of certain evidence and for failing to request a limiting instruction from the court regarding the jury's consideration of bad character evidence. In Case No. A01A2369, Howard Bixby repeats the claims asserted by Angela Bixby and asserts additional claims that the Bixbys' trial counsel was ineffective.

At trial, the State presented evidence that Angela and Howard Bixby, through their company, Action Non-Emergency Transportation Company (Action), engaged in Medicaid fraud by submitting false billing reports for amounts in excess of $1 million. The allegedly fraudulent reports were discovered when the Department of Medical Assistance (DMA), the State agency responsible for administering the Medicaid program, conducted an audit of documents submitted by Action in late 1994. The Bixbys denied any wrongdoing and claimed that any "extra money" made by Action was the result of problems with the DMA's billing system.

*Case No. A01A2368*

1. At trial, the Bixbys planned to call their civil attorney as a witness to ask him about one matter — a visit he made with the Bixbys to the DMA in November 1994. The trial court ruled that any testimony by the civil attorney beyond the fact that he represented the Bixbys would waive the attorney-client privilege entirely. The Bixbys did not object and, based on the court's ruling, decided not to have their attorney testify.

Angela Bixby claims that the trial court erred by its ruling and that her civil attorney could have testified about one particular matter without waiving the attorney-client privilege as to all other matters. But the Bixbys never objected to the court's ruling and instead acquiesced in it. "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his

ground. Acquiescence deprives him of the right to complain further."[1] Thus, we find nothing to review on this issue.

2. Angela Bixby claims that the trial court erred by allowing two of the State's witnesses, Bobby Stephens and David Walker, to offer opinions based on inadmissible hearsay, which consisted of the investigation and audit report prepared for the DMA. Bixby never raised an objection to Stephens's testimony about the DMA audit results. She therefore waived the right to raise that issue on appeal.[2]

Even if the issue had not been waived, Stephens, a special agent for the Georgia Bureau of Investigation (GBI) who was assigned to the State Health Care Fraud Control Unit, offered no opinions but merely described the GBI's investigation of Action and the fact that it began as a referral from the DMA.

Walker testified that he was an auditor for the Georgia Department of Audits, that he worked in the State Health Care Fraud Control Unit and that he was selected to perform an audit of Action in 1995. He was qualified as an expert in auditing procedures for the DMA. During his testimony, he read portions of the results of the DMA audit report, which was admitted into evidence without objection. Walker made it clear that the DMA audit report had nothing to do with his analysis and that he was reading directly from the DMA's summary. Thus, he did not offer any opinions based on the DMA audit report.[3] Moreover, the DMA audit report was not inadmissible hearsay. It was admitted into evidence, and one of the auditors who performed the audit testified about how it was conducted. Thus, we find no merit to Bixby's claim that Walker offered opinions based on hearsay.

3. Angela Bixby claims that the trial court erred by allowing Walker to testify about excess billing found in the DMA audit. She claims that this went to the ultimate issue in the case, whether Action overbilled the State for medical transportation services.

Bixby relies on OCGA § 24-9-65, which provides that opinion evidence is generally inadmissible on issues as to the existence of a fact. She argues that the following testimony violated this rule:

THE STATE: And what were the mileage results?
WALKER: Okay. Reading again directly from the Department of Medical Assistance's summary, 346 (89%) of transactions examined were billed for excessive mileage.

---

[1] (Citations and punctuation omitted.) *Smith v. State*, 192 Ga. App. 768, 771 (2) (386 SE2d 530) (1989).

[2] *Priester v. State*, 249 Ga. App. 594, 598 (3) (549 SE2d 429) (2001); *In the Interest of H. D. M.*, 241 Ga. App. 805, 808 (2) (527 SE2d 633) (2000).

[3] Compare *Brown v. State*, 206 Ga. App. 800, 801 (427 SE2d 9) (1992).

Pretermitting whether "billing of excessive mileage" was the ultimate issue in the case, we find that Walker was not offering his opinion by reading from the DMA audit summary. Moreover, as he specifically stated, the DMA's audit summary had nothing to do with his analysis. The trial court did not err by allowing this testimony.

4. Angela Bixby claims that her trial counsel was ineffective for failing to object to the admission of three types of evidence and for failing to request a limiting instruction from the court to guide and limit the jury's consideration of "the bad character evidence, alleged independent crimes." But she fails to support any of her ineffectiveness claims with a specific reference to the 431-page record, the 1,146-page transcript or any of the 3,628 pages of exhibits. In the absence of such reference, we will not search for or consider those claims.[4]

## Case No. A01A2369

5. Howard Bixby asserts the same claims as those asserted by Angela Bixby in her appeal. The Bixbys were tried together and represented by the same counsel at trial. Thus, we resolve his identical claims as set forth in Divisions 1 through 4 above.

6. Howard Bixby asserts six additional claims of ineffective assistance of counsel. He claims that his counsel was ineffective for failing to present evidence showing that (1) the State did not have authority to prosecute him, (2) the DMA had already withheld reimbursement of amounts reflected in the records used by the State's expert witness, (3) the DMA's excess mileage formula was improper, (4) he was denied due process on three occasions and (5) he was sentenced unfairly. He also claims that his counsel should have objected to the racial composition of the jury pool.

To establish ineffectiveness of trial counsel, Bixby must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[5] The standard for attorney performance is reasonably effective assistance considering all the circumstances, with a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy.[6] The test for reasonable attorney performance is " 'whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .' "[7] We review a trial

[4] Court of Appeals Rule 27 (c) (3) (i); *Mann v. State*, 244 Ga. App. 756, 761 (9) (536 SE2d 608) (2000).

[5] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[6] Id. at 687-689.

[7] (Citations omitted.) *Stansell v. State*, 270 Ga. 147, 150 (2) (510 SE2d 292) (1998).

court's finding that a defendant has been afforded effective assistance of counsel under the clearly erroneous standard.[8]

(a) Bixby argues that Medicaid funds never lose their federal character and that any theft of Medicaid funds would be a theft of federal, not state, funds. Thus, he argues, only the federal government has the authority to prosecute claims of Medicaid fraud. He claims that his trial counsel was ineffective for failing to raise this issue.

The Medicaid program, codified in 42 USC § 1396 et seq., Title XIX of the Social Security Act, as amended, authorizes federal grants to states for medical assistance to certain qualified persons. The program is jointly financed by the federal and state governments and administered by the states.[9] Title XIX provides for the designation of a single state agency to administer or supervise the Medicaid program in each state.[10] The Department of Community Health, formerly the DMA, was designated to fulfill that function in Georgia.[11] It is unlawful for any provider knowingly and willingly to accept payments under the Georgia Medicaid program to which the provider is not entitled or in an amount greater than that to which the provider is entitled, or to knowingly and wilfully falsify any report required by the program.[12] The State has authority to prosecute persons who violate this provision.[13]

Bixby was indicted for taking state money in the control of the DMA by submitting or causing to be submitted fraudulent claims for reimbursement for transportation services. The State was entitled to prosecute him on those charges. Bixby's counsel was not ineffective for failing to raise this implausible claim.

(b) Bixby appears to claim that his counsel was ineffective for failing to present evidence showing that the DMA withheld four of Action's checks pursuant to its audit and that the State's expert witness, Robert McCleskey, testified about the same audit at trial. In fact, Howard Bixby testified that in late 1994 Action supplied the DMA with business records covering a two-week period so that the agency could conduct an audit and that, pursuant to the audit, the DMA withheld four reimbursement checks worth about $61,000. McCleskey testified that he worked for the DMA in 1994 and that he was asked in late 1994 and early 1995 to conduct an audit of the same business records supplied by Action. Thus, evidence was

---

[8] *Whitner v. State*, 202 Ga. App. 608, 609 (415 SE2d 52) (1992).
[9] 42 CFR § 430.0.
[10] 42 CFR § 431.10.
[11] OCGA §§ 49-4-142; 49-4-143.
[12] OCGA § 49-4-146.1 (b) (2).
[13] OCGA § 49-4-146.1 (c).

presented showing that the DMA withheld money from Action pursuant to its 1994 audit and that McCleskey was testifying about the same audit. Bixby has shown no deficiency in his counsel's performance.

(c) Bixby claims that his counsel was ineffective for not presenting evidence showing that the DMA's formula for calculating excess mileage was improper.

McCleskey testified that, in his audit, he compared the number of miles Action reported for a particular trip to the actual map miles. To determine the map miles, he measured the straight line distance between the two points and added fifty percent to it. During cross-examination, the Bixbys' counsel challenged McCleskey on the use of this formula. Counsel also challenged the DMA's use of the formula during his cross-examination of Walker and of Wayne Blank, the director of the DMA's division of legal and regulatory services. Bixby has not shown that his counsel's performance was deficient.

(d) Bixby claims that his counsel was ineffective for failing to present evidence that he was denied his right to due process on three occasions: (1) when the DMA withheld four checks pursuant to its 1994 audit; (2) when, during execution of a search warrant at the Bixbys' residence, GBI investigators seized cash from their bedroom and (3) when the Bixbys were required to post bond. Bixby has failed to show that the alleged errors had *any* impact on his trial, much less the required showing that "counsel's [alleged] errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable."[14]

(e) The Bixbys were both given five-year sentences on Count 1 (conspiracy to defraud the State) and ten-year sentences on Count 2 (theft by taking). They were sentenced to serve five years on Count 1 and three years on Count 2 (consecutive to Count 1) in prison, and the balance on probation. Bixby claims that his counsel was ineffective for failing to present evidence that he was sentenced contrary to law.

Bixby's conviction of conspiracy to commit a felony requires that his punishment by imprisonment be "for not less than one year nor more than one-half the maximum period of time for which he could have been sentenced if he had been convicted of the crime conspired to have been committed. . . ."[15] The maximum sentence for Medicaid fraud is ten years,[16] thus Bixby's sentence on Count 1 was legally imposed.

A person convicted of theft by taking property valued in excess of $500 shall be punished by imprisonment for not less than one nor

---

[14] *Strickland,* supra at 687 (III).
[15] OCGA § 16-4-8.
[16] OCGA § 49-4-146.1 (c).

more than ten years.[17] Bixby's sentence of ten years, to serve three, was within the legal range of punishment for his offense.

Because the sentences were legally imposed, Bixby's counsel could not have made a plausible argument that they were contrary to law. Thus, counsel's failure to challenge the sentences did not constitute ineffective representation.

(f) Finally, Bixby claims that his counsel was ineffective for failing to object to a jury pool that included only one African-American. He argues that he was entitled to a jury composed of a cross-section of the community.

Bixby was entitled to a jury selected from a list that represented a fair cross-section of the community and that was not the product of intentional racial or sexual discrimination.[18] Bixby has not pointed to any evidence of intentional discrimination that his counsel could have introduced except whatever inference may be drawn from the composition of his jury panel.[19] "[D]e facto discrimination is not shown by evidence that a single jury panel contained a disproportionately small percentage of African-Americans compared to the population at large. [Cit.]"[20] Bixby has failed to show that his counsel's performance was deficient.

*Judgments affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED MARCH 12, 2002.

*Jeffrey P. Manciagli,* for appellant (case no. A01A2368).
Howard Bixby, *pro se* (case no. A01A2369).
*David McDade, District Attorney, Thurbert E. Baker, Attorney General, Charles M. Richards, Senior Assistant Attorney General, Ben L. Leutwyler III, Michael D. Johnson, Assistant Attorneys General,* for appellee.

---

[17] OCGA § 16-8-12 (a) (1).
[18] *Cook v. State,* 255 Ga. 565, 573 (11) (340 SE2d 843) (1986).
[19] See id.
[20] *Pryor v. State,* 231 Ga. App. 136, 137 (1) (497 SE2d 805) (1998).
[1] Bank of America Mortgage and its predecessors in interest are collectively referred to as "BAM."